

**U.S. Department of Justice**
Civil Division

---

*Office of the Assistant Attorney General*                     *Washington, DC 20530*

June 5, 2026

**Via ECF**
Hon. Julien X. Neals, U.S.D.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re: *United States v. Township of Morris*, *et al.*, No. 2:26-cv-03412 (JXN-CF)

Dear Judge Neals,

      Plaintiff the United States respectfully submits the following response to defendants' letter requesting a pre-motion conference prior to filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed pursuant to Section IV.A. of Your Honor's Rules and Procedures.  Dkt. 22. We anticipate opposing that motion because Morris Township's Ordinance 08-22 banning natural gas, propane gas, and fuel oil appliances and infrastructure in certain new construction is preempted by the Energy Policy and Conservation Act ("EPCA").  *See* 42 U.S.C. § 6297(c).

      Congress enacted and has since amended EPCA to both (i) establish uniform national standards for consumer appliances like kitchen ranges and ovens, water heaters, furnaces, clothes dryers, and cooking products, and (ii) expressly preempt inconsistent state and local regulations like the Ordinance:  "no State regulation concerning the … energy use … of such covered product shall be effective with respect to such product unless" one of several exceptions the Township does not invoke applies.  *Id.*; *see id.* § 6297(a)(2) (defining "State regulation" to include regulations by "political subdivisions" like townships).

      This broad preemption provision enables appliance manufacturers to design, produce, and market appliances across the country in accordance with a single set of nationally applicable regulations.  But the Township's Ordinance bans certain products that meet federal standards, along with the infrastructure needed to use them, making them effectively unmarketable by manufacturers and unavailable to consumers.  As the Ordinance and defendants' letter make plain, the Ordinance's aim and effect is to ban "gas appliances" by prohibiting EPCA-covered appliances from using any fossil fuels, a type of energy.  Dkt. 1-1 at 2; Dkt. 22 at 1.  That is a "regulation concerning … the energy use of such covered product[s]," 42 U.S.C. § 6297(c), as the only court of appeals to consider the question has held, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1102 (9th Cir. 2023), *amended on denial of reh'g en banc*.

      Defendants attempt to escape this straightforward conclusion by citing EPCA's definition of the term "energy use," "the presumption against preemption," and disagreement with the Ninth Circuit's decision, Dkt. 22 at 2–3, but those efforts are unsuccessful for several reasons.

*First*, the statutory text.  EPCA defines "energy use" to mean "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title."  42 U.S.C. § 6291(4).  "Energy," in turn, "means electricity, or fossil fuels," which includes gas, propane, and oil.  *Id.* § 6291(3).  "Energy conservation standard" has a different statutory definition.  *Id.* § 6291(6).  "Point of use" is not defined in the statute, but, giving the term its ordinary meaning, *see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018), it means the "place where something is used."  *Cal. Rest. Ass'n*, 89 F.4th at 1101; *see also Statement of Policy for Adopting Full-Fuel-Cycle Analyses Into Energy Conservation Standards Program*, 76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) (explaining that the "point-of-use method for measuring energy consumption considers the use of electricity, natural gas, propane, and/or fuel oil by an appliance at the site *where the appliance is operated*" (emphasis added)).  And "[c]oncerning means relating to, and is the equivalent of regarding, respecting, about."  *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018).  Using such words "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject."  *Id.*

By banning the installation of "natural gas, propane, or oil heaters, boilers, piping systems, fixtures or infrastructures" in covered buildings, Dkt. 1-1 at 2, the Township's Ordinance "necessarily regulates" how much energy those products consume when used, because the only permissible quantity of fossil fuel use is zero.  *Cal. Rest. Ass'n*, 89 F.4th at 1102.  Regardless of when or how "energy use" is measured (*e.g.*, in a laboratory or where a product is used by consumers), the Ordinance prohibits products *because* their energy (*i.e.*, fossil fuel) use is too high.  A manufacturer cannot comply with the Ordinance unless it designs a product to use zero energy from fossil fuels (*i.e.*, change its "energy use").  Thus, the Township functionally is setting standards that Congress determined are preempted.

*Second*, statutory context and history further confirm that the Ordinance is preempted.  Closely related provisions of EPCA regarding buildings codes excepted from preemption and the Department of Energy's authority to waive preemption in certain circumstances are informative because a form of regulation for which Congress *precluded* an exception or exemption is especially likely to be one that Congress expected to be *preempted* in the first place.  The building code exception, confirms that "EPCA's preemptive scope extends beyond direct or facial regulations of covered products" or pure energy conservation standards, *Cal. Rest. Ass'n*, 89 F.4th at 1101, because it excepts from preemption a "local building code for new construction concerning … energy use" *only if* it satisfies numerous criteria.  42 U.S.C. § 6297(f)(3).  And the waiver provision shows that Congress intended to preempt regulations like the Township's that either (i) ban product types, classes, "performance characteristics," or "features," 42 U.S.C. § 6297(d)(4), or (ii) if replicated, would "significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis," *id.* § 6297(d)(3).  Those choices should be given effect.

Congress's amendments broadening EPCA's preemptive reach—from, originally, pure "energy efficiency standard[s]" to, currently, "regulation[s] concerning the … energy use of" covered products[1]—further puts to rest defendants' seeming suggestion that only "appliance standards" are

---

[1] *Compare* Pub. L. No. 94-163, § 327(a), 89 Stat. 871, 926–27 (1975), *with* Pub. L. No. 100-12, sec. 7, § 327(c), 101 Stat. 103, 118 (1987).

preempted, Dkt. 22 at 3.  Because more than just standards are preempted, a regulation like the Ordinance that prescribes how much energy covered products can use must be covered.

*Third*, the so-called "presumption against preemption" has no bearing here for multiple independent reasons, including: (i) EPCA's text is clear so the presumption is inapplicable, (ii) the presumption should not apply to express preemption provisions like EPCA's, and (iii) prohibiting the energy use of federally regulated appliances is not a kind of historic state regulation that some courts have determined triggers the presumption.  *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018) (applying presumption to "products liability claims").

*Fourth*, the Ninth Circuit's decision is indistinguishable in any relevant sense and ultimately correct.  Defendants selectively quote from that decision to suggest it was limited to premises already connected to the gas main.  *See* Dkt. 22 at 3.  But *California Restaurant Association* invalidated Berkeley's ban on "gas piping in new construction buildings."  89 F.4th at 1098.  It merely distinguished "local regulation of a *utility's distribution* of natural gas."  *Id.* at 1103 (emphasis added).  Not only does the Township's Ordinance fall on the preempted side of that distinction by prohibiting "piping systems" and "infrastructures" within new buildings, Dkt. 1-1 at 2, it goes even further by "directly prohibit[ing] the use of covered … appliances in new buildings," something the Ninth Circuit determined "EPCA would no doubt preempt."  *Cal. Restaurant Ass'n*, 89 F.4th at 1107; *see* Dkt. 1-1 at 2 (also prohibiting "heaters, boilers, [and] fixtures").

Ultimately, as the United States has explained in briefs supporting appeals of two of the district court decisions defendants rely on, localities cannot avoid broad preemption provisions like EPCA's reinterpreting them, contrary to their plain text, to be wholly ineffectual.[2]  The Township's Ordinance is preempted.

Respectfully Submitted

BRETT A. SHUMATE
Assistant Attorney General

*/s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
  (PA Bar No. 326539)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-1141
Charles.Roberts2@usdoj.gov
*Counsel for the United States*

cc: Defendants' counsel (via ECF)

---

[2] Br. for the United States, *Nat'l Ass'n of Home Builders v. Montgomery Cnty.*, No. 26-1449 (4th Cir. June 2, 2026); Br. for the United States, *Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, No. 25-977 (2d Cir. Aug. 7, 2025).