**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>        v.<br><br>TOWNSHIP OF MORRIS, NEW JERSEY; TOWNSHIP OF MORRIS COMMITTEE; DONNA J. GUARIGLIA, in her official capacity as Mayor of Morris Township; JOSEPH VUICH, in his official capacity as Consulting Township Engineer; RON AUTH, in his official capacity as Construction Code Official,<br><br>                    Defendants. | No. 2:26-cv-03412-JXN-CF<br><br>Motion Returnable: August 3, 2026<br><br>Oral Argument Requested |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**INTRODUCTION**........................................................................................................1

**BACKGROUND** .........................................................................................................2

**ARGUMENT**.............................................................................................................. 4

I.      EPCA's Plain Text Preempts Morris Township's Ban on Energy Use by Products Subject to a Federal Standard. ........................................................................5

        A.     *The Ordinance Concerns Energy Use of EPCA-Covered Products.*......................5

        B.     *The Township's Counterarguments Are Unavailing.* ...........................................8

II.     EPCA's Statutory Context Confirms It Preempts the Ordinance. ...................................12

        A.     *The Building Code Exception Confirms Preemption.*............................................12

        B.     *The Waiver Provision Confirms Preemption.*......................................................13

        C.     *The Township's Counterarguments Are Unavailing*. ..........................................15

III.    EPCA's Statutory History Further Confirms It Preempts the Ordinance........................16

        A.     *Congress's Amendments to § 6297(c) and (d) Support Preemption Here*...........16

        B.     *The Township's Counterarguments Are Unavailing*. ..........................................18

IV.    Adopting the Township's Interpretation Would Nullify EPCA's Preemption Provision and Disrupt Its Federal Administration..............................................................19

V.     Dismissal of the Mayor and Township Committee Depends on Plaintiff's Ability to Obtain Complete Relief from the Remaining Defendants. ............................................21

**CONCLUSION** ........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*,
410 F.3d 492 (9th Cir. 2005) ................................................................................2, 16, 18

*Am. Trucking Ass'ns v. City of Los Angeles*,
569 U.S. 641 (2013).................................................................................................7, 19

*Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*,
No. 25-2041, 2026 WL 1871692 (2d Cir. June 30, 2026)..........................................11

*California Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ...............................................................................*passim*

*Chamber of Commerce of U.S. v. Whiting*,
563 U.S. 582 (2011).....................................................................................................12

*Chevron USA Inc. v. Plaquemines Parish*,
146 S. Ct. 1052 (2026)..................................................................................................10

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000).......................................................................................................4

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013).......................................................................................................4

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018)...................................................................................................5, 11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004).......................................................................................................7

*Kansas v. Garcia*,
589 U.S. 191 (2020).......................................................................................................4

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018).......................................................................................................6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024).....................................................................................................19

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)..................................................................................................4, 13

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992).....................................................................................................10

*Nat'l Meat Ass'n v. Harris*,
  565 U.S. 452 (2012)..................................................................................................7

*Pennsylvania Dep't of Corrections v. Yeskey*,
  524 U.S. 206 (1998)................................................................................................10

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016)............................................................................................4, 12

*Rowe v. New Hampshire Motor Transp. Ass'n*,
  552 U.S. 364 (2008)..................................................................................................7

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018)...................................................................................12

*Trainmen v. Baltimore & Ohio R. Co.*,
  331 U.S. 519 (1947)................................................................................................10

*Wyeth v. Levine*,
  555 U.S. 555 (2009)................................................................................................19

**U.S. Constitution**

Art. VI, cl. 2 ...............................................................................................................4

**Statutes**

Pub. L. No. 94-163, 89 Stat. 871 (1975)...........................................................16, 18

Pub. L. No. 95-619, 92 Stat. 3206 (1978).....................................................16, 17, 18

Pub. L. No. 100-12, 101 Stat. 103 (1987).........................................................16, 18

15 U.S.C. § 1203........................................................................................................9

15 U.S.C. § 1476........................................................................................................9

21 U.S.C. § 360ss.......................................................................................................9

21 U.S.C. § 387p........................................................................................................9

42 U.S.C. § 5403........................................................................................................9

42 U.S.C. § 6291...............................................................................................*passim*

42 U.S.C. § 6292.....................................................................................................2, 5

42 U.S.C. § 6293...................................................................................................2, 11

42 U.S.C. § 6295 .................................................................................................................*passim*

42 U.S.C. § 6297 .................................................................................................................*passim*

42 U.S.C. § 6302 ............................................................................................................................2

42 U.S.C. § 6309 ............................................................................................................................2

42 U.S.C. § 6311 ............................................................................................................................2

42 U.S.C. § 6317 ............................................................................................................................2

42 U.S.C. § 6314 ............................................................................................................................2

42 U.S.C. § 7543(c) ......................................................................................................................9

**Legislative Material**

H.R. Rep. No. 100-11 (1987) ....................................................................................................20

S. Rep. No. 100-6 (1987) ..........................................................................................................20

**Regulatory Material**

10 C.F.R. § 430.32(d) ...................................................................................................................6

*Proposed Rulemaking and Public Hearings Regarding Energy Efficiency Standards for Refrigerators and Refrigerator-Freezers, Freezers, Clothes Dryers, Water Heaters, Room Air Conditioners, Kitchen Ranges and Ovens, Central Air Conditioners, and Furnaces*,
47 Fed. Reg. 14,424 (Apr. 2, 1982) ...................................................................................17

*Final Rule for Clothes Dryers and Kitchens Ranges and Ovens*,
47 Fed. Reg. 57,198 (Dec. 22, 1982) ................................................................................17

*Statement of Policy for Adopting Full-Fuel-Cycle Analyses Into Energy Conservation Standards Program*,
76 Fed. Reg. 51,281 .................................................................................................6, 11

*Procedures, Interpretations, and Policies for Consideration of New or Revised Energy Conservation Standards and Test Procedures for Consumer Products and Certain Commercial/Industrial Equipment*,
90 Fed. Reg. 16,093 ...........................................................................................................20

**Other Authorities**

U.S. Dep't of Energy, *Secretarial Order: Unleashing the Golden Era of American Energy Dominance* (Feb. 5, 2025), https://perma.cc/8GHX-PRA5 .....................................................20

Plaintiff respectfully submits this brief in opposition to Defendants' Motion to Dismiss, Dkt. 27, and Memorandum of Law in Support, Dkt. 27-1 ("Mem.").

## INTRODUCTION

The question in this case is whether a local law prohibiting *using* "natural gas, propane, or oil heaters, boilers, piping systems, fixtures or infrastructures to meet building energy needs"—including "all space conditioning including heating and cooling, water heating including pools and spas, cooking appliances and clothes washing and drying appliances"—is a "regulation concerning the … *energy use*" of those appliances.  The answer is yes.

The Energy Policy and Conservation Act (EPCA) directs the Department of Energy to establish energy conservation standards for certain consumer products and industrial equipment—such as appliances—and then expressly preempts state and local "regulation[s] concerning the … energy use" of those products that the Federal Government has authorized to be sold.  42 U.S.C. § 6297(c).  This broad preemption provision enables appliance manufacturers to design, produce, and market appliances across the country in accordance with a single set of nationally applicable regulations.  But Morris Township's Ordinance 08-22 (the "Ordinance") bans the use of certain appliances in certain buildings that meet federal standards, along with the infrastructure needed to use them, based on their energy use, making them effectively unmarketable by manufacturers and unavailable to consumers.  Regulating—indeed, prohibiting—the energy use of federally authorized appliances in this manner is preempted, a conclusion mandated by EPCA's plain text, consideration of the statutory context and history, and the Department's implementation of the statutory regime.  *Id.*  As the Ninth Circuit recognized when invalidating a local measure prohibiting natural gas infrastructure in new buildings, "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024), *amended on denial of reh'g en banc*.  This Court should hold likewise and deny Defendants' Motion to Dismiss, which overlooks key aspects of both the Ordinance EPCA to ask this Court effectively to nullify EPCA's preemption provision.

- 1 -

## BACKGROUND

**1.** Congress passed EPCA to establish a "comprehensive energy policy" addressing "the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources" laid bare by the 1970s oil crisis. *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 498 (9th Cir. 2005). In service of its goals to promote both domestic energy supply and energy conservation, Congress began regulating many appliances' energy efficiency and energy use. *See id.*

Originally, EPCA permitted more substantial state and local involvement in appliance regulation. *Id.* at 499. But Congress narrowed that authority as it directed increasingly greater federal involvement. Amendments in the 1970s and 1980s eventually mandated federal standards for many appliances and authorized the Department to issue new or revised standards. *See id.* at 499–500.[1] Products covered by EPCA now may only be "distribute[d] in commerce" if they conform with the applicable federal standard, which requires rigorous testing among other things. § 6302(a)(5); *see* §§ 6292, 6293, 6295, 6314.

To give effect to federal standards and ensure that manufacturers can market and sell products that conform with them, Congress broadened EPCA's preemption clause. As amended, EPCA preempts not only state and local regulations that are stricter than (and therefore would effectively supersede) a federal standard, but more broadly any regulation "concerning the energy efficiency, energy use, or water use of" products subject to a federal standard. § 6297(c). EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use." § 6291(4). It defines "energy" as "electricity, or fossil fuels." § 6291(3). And, separately, EPCA defines "energy conservation standard" to mean:

---

[1] Unless otherwise indicated, all section (§) citations refer to Title 42 of the U.S. Code.

EPCA addresses consumer products and industrial equipment separately. *See* §§ 6291–6309 (consumer); §§ 6311–6317 (industrial). The provisions are substantially similar, and nothing at issue turns on the specific type of product involved. For convenience, this brief cites the consumer product provisions. *Cf. Air Conditioning & Refrigeration Inst.*, 410 F.3d at 496 n.2 (taking a similar approach).

(A) a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or, in the case of showerheads, faucets, water closets, and urinals, water use, for a covered product, determined in accordance with test procedures prescribed under section 6293 of this title; or

(B) a design requirement for the products specified in paragraphs (6), (7), (8), (10), (15), (16), (17), and (20) of section 6292(a) of this title; and

includes any other requirements which the Secretary may prescribe under section 6295(r) of this title.

§ 6291(6).

Congress also specified that "regulation[s] or other requirement[s] contained in a State or local building code for new construction concerning the energy efficiency or energy use of [a] covered product" are preempted *unless* they satisfy specific conditions. § 6297(f)(3); *see* § 6297(c)(3).

States and localities may ask the Department to waive this preemption, but Congress strictly cabined waiver authority both procedurally and substantively. *See* § 6297(c)(2), (d). For example, EPCA prohibits waiving preemption of measures that are "likely to result in the unavailability … of performance characteristics [or] features" in covered products available within a state or locality. § 6297(d)(4). So too if the "regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." § 6297(d)(3).

**2.** Morris Township enacted Ordinance 08-22 in May 2022 to prohibit appliances from using natural gas, propane gas, and fuel oil in covered buildings. *See* Compl. ¶¶ 21–23, Dkt. 1. The measure prohibits Township officials from issuing construction permits for new apartment complexes or apartment style housing comprised of 12 or more dwelling units unless the permit requires the building to be constructed as an "all-electric building." Morris Twp. Code of Ordinances § 194-2. In turn, "All-electric Buildings" means

[a] building or project that uses a permanent supply of electricity as the sole source of energy to meet building energy needs. An all-electric building or project shall have no natural gas, propane, or oil heaters, boilers, piping systems, fixtures or infrastructures installed to meet building energy needs.

- 3 -

*Id.* § 194-1.  And "Building Energy Needs shall mean all space conditioning including heating and cooling, water heating including pools and spas, cooking appliances and clothes washing and drying applicances" [*sic*].  *Id.*[2]

The Township has not sought a preemption waiver from the Department.

## ARGUMENT

Pursuant to the Constitution's Supremacy Clause, "Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *see* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").  Congress may do so in express terms.  *Kansas v. Garcia*, 589 U.S. 191, 202 (2020).  When a statute preempts state law expressly, a court's only "task is to identify the domain expressly pre-empted."  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quotation marks omitted).  To do that, courts use the typical tools of statutory interpretation, starting with "the language of the statute itself" and ending there if "the statute's language is plain."  *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quotation marks omitted).  The surrounding "statutory framework" may also help inform a preemption provision's meaning.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

EPCA's broad preemption provision bars local measures, like the Township's, that prohibit products subject to a federal energy conservation standard from using a type of energy.  As the Ninth Circuit explained, "a building code that prohibits consumers from using natural gas-powered appliances in newly constructed buildings necessarily regulates the 'quantity of energy directly consumed by [the appliances] at point of use.'"  *California Rest. Ass'n*, 89 F.4th at 1102 (alteration in original); *see id.* at 1107 (EPCA preempts a regulation that "directly prohibits the

---

[2] Permits for "mixed-fuel" buildings may issue upon a finding "that construction of an all-electric building is physically or technically infeasible," although "[f]inancial considerations shall not be sufficient basis" for such a finding.  Morris Twp. Code of Ordinances § 194-3(A).  And a successful applicant for an excepted mixed-fuel building must pay costs related to connecting "any gas main and/or transmission system."  *Id.* § 194-3(B).

use of covered natural gas appliances in new buildings."). Indeed, to conclude otherwise would require holding that a ban on using a type of energy somehow does *not* "concern[] … energy use." EPCA requires no such linguistic strain. On the contrary, text, context, and history all confirm that this Ordinance is preempted. A contrary ruling would disrupt federal administration of the statute. And the Township's arguments tellingly neglect several key features both of EPCA and of the Ordinance in a bid to narrow EPCA's preemptive reach to imperceptibility. Congress did not write the kind of meaningless preemption provision the Township requires to prevail, so the Motion to Dismiss should be denied.

**I.      EPCA's Plain Text Preempts Morris Township's Ban on Energy Use by Products Subject to a Federal Standard.**

*A. The Ordinance Concerns Energy Use of EPCA-Covered Products.*

Section 6297(c) provides that, once the Department of Energy has approved a standard for a covered product, "no State regulation concerning the … energy use … of such covered product shall be effective." § 6297(c). The domain expressly preempted is therefore "State regulation[s] concerning … energy use," and the resolution of this case turns on whether that language covers Ordinance 08-22.

To start, the term "State regulation" includes laws of "political subdivisions" like Morris Township. § 6297(a)(2)(A). Next, the relevant subject of preempted regulations is "energy use," a term defined in EPCA to mean "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." § 6291(4). "Energy," in turn, "means electricity, or fossil fuels," which includes fuel gas, propane, and oil. § 6291(3). A "consumer product" is "any article" which "consumes, or is designed to consume" energy and is distributed in commerce for personal use, such as a kitchen stove. § 6291(1); *see* § 6292 (identifying covered products). "Point of use" is not defined in the statute, but, giving the term its ordinary meaning, *see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018), the phrase means the "place where something is used." *California Rest. Ass'n*, 89 F.4th at 1101 (quotation marks omitted); *see also Statement of Policy for Adopting Full-Fuel-*

*Cycle Analyses Into Energy Conservation Standards Program*, 76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) (explaining that the "point-of-use method for measuring energy consumption considers the use of electricity, natural gas, propane, and/or fuel oil by an appliance at the site *where the appliance is operated*" (emphasis added)).

Putting all this together, then, EPCA preempts local regulations concerning the quantity of fossil fuels consumed by a covered product where that product is used, once the Department has set a standard to cover that specific type or class of product. *See California Rest. Ass'n*, 89 F.4th at 1101–02 (analyzing statutory terms and context).

This rule plainly covers the Ordinance. By banning the *use* of "natural gas, propane, or oil *heaters*, *boilers*, piping systems, *fixtures* or infrastructures installed to meet building energy needs" (*i.e.*, "all space conditioning, including heating and cooling, water heating, including pools and spas, cooking *appliances* and clothes washing and drying *applicances*" [*sic*]), Morris Twp. Code of Ordinance § 194-1 (emphasis added), it is even more clearly preempted than the gas piping ban at issue in *California Restaurant Association*, because it "directly ban[s] [EPCA-covered] appliances in new buildings," 89 F.4th at 1098. Since federal standards exist for several types of such products—*see, e.g.*, § 6295(h) (kitchen ranges and ovens); 10 C.F.R. § 430.32(d) (water heaters), (e) (furnaces), (h) (clothes dryers), (j) (cooking products)—the Ordinance is preempted as to those products.

But were there any doubt on this score, EPCA's preemption clause sweeps even more broadly than facial regulations of a product's energy use. Section 6297(c) displaces any regulation "concerning" energy use of a covered product. "Concerning means relating to, and is the equivalent of regarding, respecting, about." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (quotation marks omitted). The use of such words "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Id.*; *see* Mem. 22. Congress therefore intended § 6297(c) to reach broadly, a choice that must be given meaningful effect. That reach is not unlimited, *see infra* Part IV, but, at a bare minimum, a law that explicitly prohibits a particular class of products

- 6 -

based on the type of energy they use "relates to" their "energy use."

Further, the Supreme Court has repeatedly instructed that such a broadly worded preemption clause cannot be evaded by slightly "shifting the[] regulatory focus" to employ an "indirect but wholly effective means" of achieving a preempted objective. *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 652 (2013); *see Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 458, 463–64 (2012) (holding that a state cannot evade a preemption clause aimed at requirements "with respect to" slaughterhouses by framing its regulation "as a ban on the sale of meat produced in whatever way the State disapproved"); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (preempting "the very effect that the federal law sought to avoid" even if pursued "less direct[ly] than it might be" (quotation marks omitted)).

Especially instructive here is *Engine Manufacturers Association v. South Coast Air Quality Management District*, 541 U.S. 246 (2004). That case concerned a provision of the Clean Air Act that preempted any standard "relating to the control of emissions from new motor vehicles" and local rules that prohibited the purchase of vehicles that did not comply with certain emission requirements. *Id.* at 249, 252 (quotation marks omitted). The Supreme Court rejected the district court's attempt "to draw a distinction between purchase restrictions (not pre-empted) and sale restrictions (pre-empted)." *Id.* at 252. The Court explained that "[t]he manufacturer's right to sell federally approved vehicles is meaningless in the absence of a purchaser's right to buy them." *Id.* at 255.

Here, EPCA authorizes the sale only of covered products that conform with federal standards and preempts state and local attempts to restrict that authorization. And here, as in *South Coast Air*, the right of manufacturers to sell conforming products is meaningless if consumers cannot buy (or can buy but cannot use) those products. For that reason, as the Ninth Circuit recognized, "Congress ensured that States and localities could not prevent consumers from using covered products in their homes, kitchens, and businesses. So EPCA preemption extends to regulations that address the products themselves *and* building codes that concern their *use* of natural gas." *California Rest. Ass'n*, 89 F.4th at 1103. Accordingly, there is "no doubt" that

- 7 -

EPCA "preempt[s] an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *Id.* at 1107.

B. *The Township's Counterarguments Are Unavailing.*

Defendants' response elides key aspects of both the Ordinance and EPCA, places undue reliance on an undefined statutory phrase and the so-called "presumption against preemption," and ultimately asks the Court to nullify § 6297(c). Those arguments should be rejected.

**1.** To start, the Township neglects to mention that its Ordinance operates *directly* on "heaters, boilers, … fixtures," "cooking appliances and clothes washing and drying applicances" [*sic*] subject to federal standards by explicitly prohibiting them based on the type of energy they use. Morris Twp. Code of Ordinance § 194-1; *see* Mem. 4–7 (describing the Ordinance but omitting this text). That fact alone distinguishes the Ordinance from the cases addressing arguably less direct measures like bans on only gas combustion or infrastructure. *See* Mem. 4 (citing cases). And that fact negates Defendants' efforts to distinguish *California Restaurant Association*. *See* Mem. 27–28. Berkeley's ordinance banned "the installation of natural gas piping in certain buildings." Mem. 3; *see California Rest. Ass'n*, 89 F.4th at 1098. The Township's Ordinance does that, Morris Twp. Code of Ordinance § 194-1 (prohibiting "natural gas, propane, or oil … piping systems … or infrastructures"), and more, *id.* (prohibiting "heaters, boilers, … fixtures," "cooking appliances and clothes washing and drying applicances" [*sic*]). If anything, any distinctions cut *against* the Township by demonstrating why its Ordinance is more clearly preempted. *See California Rest. Ass'n*, 89 F.4th at 1107.[3] If a locality can directly ban heaters, boilers, fixtures, and appliances subject to federal standards based on the type of energy they use, it is hard to imagine what would be left of EPCA's preemption provision.

---

[3] As the Ordinance's text makes clear, this is not a case about a "utility's distribution of natural gas." Mem. 27. The Township has targeted EPCA-covered products directly, along with the infrastructure needed to use them. Nowhere does the ordinance discuss a "utility," or the "distribution" or "delivery" of natural gas. Mem. 27–28. Indeed, it covers additional fuel types as well. *See* Morris Twp. Code of Ordinance § 194-1 ("propane" and "oil").

**2.**   The Township's bid to limit § 6297(c) to preempt only state and local "energy conservation standards" or "performance standards," Mem. 1, 7, 19–20, further neglects two central features of the statutory text: EPCA's separate definitions for the terms "energy use" and "energy conservation standard;" and its use of the broadening term "concerning."

Although Defendants recognize that "EPCA provides precise definitions of its operative terms," Mem. 2–3, their arguments fail to give effect to Congress's choice to define "energy use" and "energy conservation standard" separately, § 6291(4), (6).   If Congress had written § 6297(c) to preempt only "energy conservation standards" as defined in § 6291(6)(A), the Township's admittedly "narrow" reading might make sense.   Mem. 1.[4]   But of course that is not what Congress wrote.   Quite the contrary (as statutory context and history discussed below confirm, *see infra* Parts II, III).[5]   Congress chose to preempt any "regulation concerning … energy use."   § 6297(c). So the Township's proposal to limit that provision to a different class of regulations (only those "equivalent to an energy conservation standard," Mem. 19) is best directed to Congress, not the Judiciary.

Regardless, the Ordinance would be preempted even if § 6297(c) were limited to "energy conservation standards," because it "prescribes … a maximum quantity of energy use" for many covered products, or at least functions as such a prescription.   § 6291(6).   By prohibiting the use of covered products and the infrastructure needed to run them, the law on its face sets the maximum amount of energy such an appliance can use at zero.   *See California Rest. Ass'n*, 89 F.4th at 1102 (rejecting the argument that the Berkeley ordinance does not "prescribe[] an affirmative quantity of energy" because "it is well accepted in ordinary usage that zero is a quantity" (quotation marks omitted)).   It is undisputable that a local law prescribing the maximum

---

[4] *But see* § 6291(6)(B) (including in the definition of "energy conservation standard" any "design requirement" for numerous products covered by the Ordinance).

[5]   Indeed, Congress routinely focuses preemption provisions specifically on product, manufacturing, or similar technical "standards," as it did in previous versions of EPCA but *not* in the operative one here.   *E.g.*, 15 U.S.C. §§ 1203(a), 1476(a); 21 U.S.C. §§ 360ss, 387p(a)(2)(A); 42 U.S.C. §§ 5403(d), 7543(c).

quantity of energy use at some miniscule, unattainable value just greater than zero would be preempted by EPCA.  There is no logical reason why lowering that quantity to zero should lead to a different result.  Indeed, the Ordinance is the most burdensome form of energy conservation standard imaginable for affected products, prohibiting any energy use and requiring consumers to choose other, more favored products.  This effect on energy use is not merely incidental, let alone "tenuous" or "remote."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (quotation marks omitted).  It is intentional and core.

Defendants' arguments would further amend § 6297(c) by denying any meaning to Congress's choice of the word "concerning."  They would effectively substitute the word "concerning" with "of."  EPCA's text sweeps more broadly.  As the Supreme Court confirmed this Spring, "relating to" (which the Township concedes is a "synonym[]" of "concerning," Mem. 22) "sweeps broadly" and means "to stand in some relation; to have bearing or concern; to pertain, refer; to bring into association with or connection with."  *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1060 (2026) (quoting *Morales*, 504 U.S. at 386).  "One thing can relate to another even if the connection is indirect."  *Id.* (quotation marks omitted).  And it can do so here without the kind of "indeterminacy" or "infinite connections" that the Township decries.  Mem. 22, 23 (quotation marks omitted).  After all, the Ordinance operates directly on EPCA-covered "appliances."  Morris Twp. Code of Ordinances § 194-1.  As soon as EPCA's preemptive scope is recognized to be broader than literal energy conservation standards, measures like the Ordinance cannot stand.[6]

**3.**  Rather than confront these statutory definitions and the problems they create for its arguments, the Township leads with a discussion of an undefined phrase: "point of use."  *See* Mem. 10–12.  That discussion is both mistaken and ultimately irrelevant.

---

[6] The Township's reliance on the "subsection's heading," Mem. 19, is also misplaced, because "the title of a statute ... cannot limit the plain meaning of the text.  For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase.'" *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-529 (1947)).

Instead of giving the undefined term its ordinary meaning as courts should, *see Encino Motorcars*, 584 U.S. at 85, Defendants posit a variety of "technical meaning[s]" (none of which comes from EPCA and all but one of which substantially postdate its enactment) without definitively settling on any, *see* Mem. 10–12. For its part, the Ninth Circuit dissent they rely on viewed "point of use" as meaning that a product's energy is measured without adjustment for any "energy losses that occur in the generation, transmission, and distribution of electricity.'" *California Rest. Ass'n*, 89 F.4th at 1123–25 (Friedland, J., dissenting from denial of en banc). So too for the Second Circuit's recent decision. *See Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, No. 25-2041, 2026 WL 1871692, at *13–16 (2d Cir. June 30, 2026). While it is true that compliance testing for EPCA standards happens in a laboratory setting that is intended to eliminate real-world variables, EPCA considers "the quantity of energy *directly consumed* by a consumer product at point of use," § 6291(4) (emphasis added), "during a representative average use cycle or period of use," § 6293(b)(3) (testing procedures), and so the Department considers "where the appliance is operated," 76 Fed. Reg. at 51,283. A representative average use cycle or period of use would not occur on the moon or at the bottom of the sea, after all. Instead, it would occur where the product is used and based on the type of energy the product is designed to use. Yet measures like the Township's Ordinance prohibit that energy use, thereby making a representative average use cycle or period of use impossible for targeted products.

Recognizing this real-world impact, then, is consistent with the Ninth Circuit majority's focus on the energy used by covered products "at their intended final destinations." *California Rest. Ass'n*, 89 F.4th at 1102. As that court further observed, the preemption waiver provision in § 6297(d) requires the Department to "consider the complete lifecycle of an appliance—from manufacturing to servicing," which would make "little sense if the scope of EPCA's preemption ends with the design or manufacture of the product" by covering only literal energy conservation standards. *Id.* at 1104.

More fundamentally, though, even accepting a more technical definition of "point of use" would not change the result. Regardless of the precise time or means of measurement, the

- 11 -

Ordinance prohibits "appliances" that are compliant with EPCA standards *because* their energy (*i.e.*, fossil fuel) use is too high.  For a manufacturer to comply with the Township's standard, it would have to design and manufacture a product that uses zero energy from fossil fuels—regardless of whether that energy usage is measured in a home or in a laboratory setting.  And that is why the Ordinance is preempted.  The Township functionally is setting standards that Congress determined are preempted (absent a waiver).  § 6297(c).

**4.**  Defendants' last resort from EPCA's text is the so-called "presumption against preemption."  *See* Mem. 24–26.  That has no bearing here for multiple independent reasons.  *First*, the presumption should not apply to express preemption provisions like § 6297(c).  *See Franklin California-Free Tr.*, 579 U.S. at 125 ("[B]ecause the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" (quoting *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011))).  *Second*, as demonstrated above, EPCA's text is clear, so any presumption is either (again) inapplicable or simply overcome.  *See supra* Part I.A.  And *third*, prohibiting the energy use of federally regulated appliances is not a kind of historic state regulation that some courts have determined triggers the presumption.  *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018) (applying presumption to "products liability claims" based on off-label promotion of a medical device).  Indeed, it is only the recent wave of aggressive new state and local regulations that has prompted the need for litigation over the preemption questions presented here.

## II.    EPCA's Statutory Context Confirms It Preempts the Ordinance.

Because the plain text of § 6297(c) displaces Ordinance 08-22, the Court's inquiry could properly stop there.  But if more were needed, related provisions of EPCA confirm that conclusion.

### A.  The Building Code Exception Confirms Preemption.

The Supreme Court has observed that exceptions to a preemption clause are helpful in

interpreting a preemption provision's scope.  *See Medtronic*, 518 U.S. at 486.  And here, EPCA's building code exception provides an especially important part of the "'statutory framework' surrounding" the preemption provision and, therefore, a significant source of evidence regarding § 6297(c)'s scope.  *Id.*; *see* § 6297(c)(3), (f)(3).  The statute provides that "a regulation … contained in a State or local building code for new construction concerning the … energy use of such covered product is not superseded" if it "complies with all" of the seven specified requirements.  § 6297(f)(3).  By exempting only a narrow sliver of energy use regulations contained in building codes, and preempting all others, Congress underscored that "EPCA's preemptive scope extends beyond direct or facial regulations of covered products" and prevents states from evading preemption by regulating appliances indirectly through other types of measures.  *California. Rest. Ass'n*, 89 F.4th at 1101.  Further still, Congress explicitly prohibited allowing state and local conservation objectives based only on one type of energy rather than total energy to qualify for this exception.  § 6297(f)(3)(F).

Defendants fail to dispute that the Ordinance is a building code.  Nor do they contend that it satisfies the requirements to escape preemption as such.  Indeed, the Township admits that § 6297(f) "establishes … that *some* building code requirements could be preempted."  Mem. 30.  The example it cites, "a building code requirement that set aggregate limits on building-wide energy consumption," gives away their case.  *Id.*  By conceding that "such a requirement would by implication require appliances that are more efficient than the federal energy conservation standards," *id.*, Defendants leave no room to argue that the Ordinance's requirement that "appliances" use a different quantity of energy than the federal energy conservation standards survives.  After all, § 6297(c) (and (f)) preempt regulations concerning "energy use" just as much as those concerning "energy efficiency."

*B.  The Waiver Provision Confirms Preemption.*

Another relevant provision is § 6297(d), which permits the Department to waive preemption in certain circumstances.  The waiver provides relief in appropriate circumstances

- 13 -

from § 6297(c)'s general rule of preemption, but Congress strictly limited authority to grant waivers. § 6297(d). A form of regulation for which Congress precluded a waiver is especially likely to be one that Congress expected to be covered by the preemption provision in the first place. Otherwise, there would be no need to limit waiving preemption of that form of regulation.

Two separate categories of regulation for which waiver is unavailable demonstrate that regulations like the Ordinance should be (and remain) preempted. *First*, § 6297(d)(4) prohibits waiving preemption of regulations that are "likely to result in the unavailability … of performance characteristics (including reliability), features, sizes, capacities, and volumes" in "any covered product type (or class)" "that are substantially the same as those generally available" in the regulating jurisdiction when the Secretary decides whether to waive preemption.[7] Thus, Congress intended to preempt regulations that eliminate currently authorized types or classes of products or products' performance characteristics or features from the market. But that is precisely what the Ordinance seeks to do. It prohibits whole types or classes of "appliances" based on a characteristic or feature the Township disfavors: the use of energy from gas, propane, or oil.

*Second*, § 6297(d)(3) prohibits waiver if the "regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." A law preventing the use of gas, propane, and oil appliances in new construction will necessarily burden the *sale* (and manufacturing, marketing, distribution, and servicing) of those appliances. Several "relevant factors" the Secretary "shall evaluate" to determine the regulation's burdens prove the point. *See* § 6297(d)(3) (addressing measures that "will disadvantage smaller manufacturers, distributors, or dealers or lessen competition in the sale of the covered product[s] in the State"; "would result in a reduction— (i) in the current models, or in the projected availability of models, that could be shipped … to the State" or "(ii) in the current or projected sales volume of the covered product type (or class) in the State"; and are "likely to contribute significantly to a proliferation of" similar requirements in other jurisdictions pursuing similar

---

[7] Another provision, § 6295(o)(4), prohibits the Department from promulgating an energy conservation standard in the first place if similar unavailability would result.

electrification agendas that would have a "cumulative impact" on the market for covered appliances). And if the Ordinance is replicated, these effects will occur nationwide. *See California Rest. Ass'n*, 89 F.4th at 1104 ("[N]o doubt Berkeley's ban, if adopted by States and localities throughout the country, would 'significantly burden' the 'sale' of covered products 'on a national basis.'").[8]

The Township's brief discussion of the waiver provision neglects these relevant portions to focus instead on a different requirement that heightens the bar to escape preemption. *See* Mem. 21–22 (discussing "unusual or compelling" interests requirement for waiver). That provision supports *upholding* EPCA's preemptive reach, not *nullifying* it.

### C. The Township's Counterarguments Are Unavailing.

Defendants strain to find contextual support for their view that § 6297(c) is limited to energy conservation standards in even less obviously related provisions than these exception and waiver provisions discussed above, but those efforts fall flat. *See* Mem. 17–18.

The Township's concerns regarding "labeling" and "test[ing] for and certify[ing] compliance," and the need for a "static" energy use value for purposes of other EPCA provisions, Mem. 17–18, suffer from the same flaws as its reliance on a hyper-technical definition of "point of use," *see supra* Part I.B.3. Interpreting EPCA to preempt the Ordinance does not mean "energy use" labels must change depending on how a consumer uses the product; the point merely is that a law prohibiting a type or class of appliance from using the type of energy it requires to reach that static value for labeling purposes is a regulation *concerning* those appliances' "energy use." Simply put, there is no way for a covered product to both (i) comply with the Township's standard (zero energy from natural gas, propane, or oil) and (ii) perform according to its federal energy conservation standard (use some non-zero amount of energy from those sources to complete a representative average use cycle or period of use). To comply, the manufacturer would need to

---

[8] Congress's inclusion of not just a given "covered product" but also "product *type*" and "*class*" in both § 6297(d)(3) and (4) further underscores that bans targeting whole types or classes of covered products (like the Ordinance's ban on products that use gas, propane, or fuel) fall within EPCA's preemptive reach.

alter the product's design. That establishes preemption, even under this conception of § 6297(c).

### III.  EPCA's Statutory History Further Confirms It Preempts the Ordinance.

Both the preemption and waiver provisions have evolved over time, further restricting state and local interference with federally covered products and extending the statute's preemptive reach beyond literal "energy conservation standards" and beyond even "similar requirements." This statutory history disproves the Township's desired interpretation.

*A.  Congress's Amendments to § 6297(c) and (d) Support Preemption Here.*

**1.** From 1975 to the present version, Congress has extended the preemption provision to cover more than just "energy conservation standards" or their equivalents. *See Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500. The three versions are reproduced in relevant part below:

> **1975:** "This part supersedes any State regulation insofar as such State regulation may now or hereafter *provide for … any energy efficiency standard or similar requirement with respect to* energy efficiency or energy use of a covered product…." Pub. L. No. 94-163, § 327(a), 89 Stat. 871, 926–27 (1975) (emphasis added) ("Effect on Other Law").

> **1978:** "If a State regulation is prescribed *which establishes an energy efficiency standard or other requirement respecting* energy use or energy efficiency of a type (or class) of covered products and which is not superseded by subsection (a)(2) or (b)(2), then" a regulated party may petition for preemption. Pub. L. No. 95-619, sec. 424(a), § 327(b)(1), 92 Stat. 3206, 3263–64 (1978) (emphasis added) ("Effect of Standards on Other Laws").

> **1987:** "[N]o State *regulation concerning* the energy efficiency or energy use of such covered product shall be effective with respect to such product." Pub. L. No. 100-12, sec. 7, § 327(c), 101 Stat. 103, 118 (1987) (emphasis added) ("Effect on Other Law").

The 1975 version is the narrowest substantively. Whatever regulations it covered beyond formal "energy efficiency standard[s]" had to provide for a "*similar* requirement with respect to … energy use." 89 Stat. at 927 (emphasis added). The 1978 version is broader substantively but narrower procedurally. It replaced "similar requirement," *id.*, with "*other* requirement respecting

- 16 -

energy use;"[9] and it imposed a requirement to "petition" the Department for preemption to be effective, 92 Stat. at 3263–64 (emphasis added).  Today's version, from 1987, is broader still. *See California Rest. Ass'n*, 89 F.4th at 1104 n.6 (describing the 1978 version as "narrower than today").  No longer does the provision specify "energy efficiency standard[]" (or energy conservation standard) in a way that might suggest a regulation must at least be like an energy conservation standard to be preempted—let alone equivalent.  *See id.*  Nor must the state or local measure "establish[]" a "requirement."  *See id.*  It now covers any "regulation *concerning* … energy use."  101 Stat. at 118 (emphasis added).  And it removes the petition requirement for preemption to be effective.  *Id.*

This history puts to rest any contention that the operative language equates "regulation concerning … energy use" with "energy conservation standard."  § 6297(c).  *Contra* Mem. 1, 7, 19–20 (interpreting them synonymously).  And because more than just standards are preempted, a regulation like the Ordinance that prescribes how much energy a type or class of appliances can use is also covered.  *See supra* Part I.A.

Even under the narrower 1978 language, the Department interpreted EPCA to preempt indirect bans on products subject to a federal standard.  *Final Rule for Clothes Dryers and Kitchens Ranges and Ovens*, 47 Fed. Reg. 57,198, 57,215 (Dec. 12, 1982).[10]  In addition to the

---

[9] The current waiver provision retains the 1978 "other requirement" language, but this holdover does not negate the 1987 change to the preemption provision's operative language. § 6297(d)(1)(A).  And, in any event, the Ordinance still would fit the bill, because it "require[s]" zero "energy use" by covered products.  *Id*.

[10] This interpretation followed a proposed rule that "[m]any commenters indicated [left] uncertainty" as to the scope of preempted State and local laws.  47 Fed. Reg. at 57,215; *see Proposed Rulemaking and Public Hearings Regarding Energy Efficiency Standards for Refrigerators and Refrigerator-Freezers, Freezers, Clothes Dryers, Water Heaters, Room Air Conditioners, Kitchen Ranges and Ovens, Central Air Conditioners, and Furnaces*, 47 Fed. Reg. 14,424, 14,455 (Apr. 2, 1982) (focusing on "energy efficiency standards" under the header "Preemption of State Regulations").  Yet even that proposed rule recognized that "effectively ban[ning] appliances using certain types of fuel" "should not be the consequence of standards" because EPCA's focus on "saving energy is relative, not absolute."  47 Fed. Reg. at 14,434. Defendants' reliance on this "early EPCA rulemaking," Mem. 19–20, (so early that it predated both the final rule *and* the operative version of § 6297(c)) is therefore misplaced.

building codes discussed above, the Department advised that a "[p]rohibition of hook-ups for appliances with less than a certain efficiency" and "[p]rohibitions on standing pilot lights" in products subject to a federal standard would both "be subject to preemption." *Id.* & n.34. Neither hook-ups nor standing pilot lights were covered products subject to their own energy efficiency standards; nor did prohibiting them establish an energy efficiency standard in its own (technical) right. Yet such prohibitions are, if not functional "standards," at least "other requirement[s] respecting energy use." 92 Stat. at 3263–64. All the more so today for a provision like the Township's that prohibits whole types or classes of appliances based on what type of energy they use.

**2.** The waiver provision's history tells a similar story. Originally, waiver was impermissible unless, among other things, "such State regulation contains a more stringent energy efficiency standard than the corresponding Federal standard." 89 Stat. at 927 (Sec. 327(b)(2)(C)). Similarly, the 1978 version required that "such State regulation contains a more stringent energy efficiency standard than such Federal standard." 92 Stat. at 3264. But the 1987 amendments eliminated that stringency requirement, replacing it with a more reticulated set of requirements aimed at determining whether "such State regulation is needed to meet unusual and compelling State or local energy interests." 101 Stat. at 119. This makes sense not just because of Congress's goal to make waiver "more difficult for states to obtain," *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500, but also because Congress intended to preempt more than just literal state and local energy efficiency standards, to instead encompass any regulations "concerning" energy use and energy efficiency.

### B. *The Township's Counterarguments Are Unavailing.*

Defendants offer little discussion of statutory history, let alone any explanation for why Congress would both amend § 6297(c) to reach regulations other than just "efficiency standards" and still mean for it to reach only "efficiency standards." Instead, they mainly attack what they characterize as the *Department's* recent change in position. *See* Mem. 3, 6–7. As discussed, that

- 18 -

historical record cannot overcome *Congress's* choices reflected in statutory text, context, and (amendment) history. *See* Mem. 7 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024)). And, in any event, there is regulatory history pointing toward a more expansive (*i.e.*, effectual) interpretation of EPCA's preemptive reach. *See supra* p. 17–18 & n.9 (discussing 1982 rulemaking that interpreted earlier, narrower version of EPCA to preempt indirect bans on products subject to a federal standard).

**IV.    Adopting the Township's Interpretation Would Nullify EPCA's Preemption Provision and Disrupt Its Federal Administration.**

EPCA prevents states and localities from interfering with what the Department does at the federal level. If products authorized for sale pursuant to a federal energy conservation standard can be categorically outlawed by any state or locality based on the type of energy they use, that would effectively negate § 6297(c) and disrupt the Department's administration of EPCA's Energy Conservation Program. *Cf. Wyeth v. Levine*, 555 U.S. 555, 576 (2009) ("[W]e have attended to an agency's explanation of how state law affects the regulatory scheme."). It would also severely limit or even cut off consumers' options.

In particular, raising the bar for preemption to just "energy conservation standards" would allow any state or locality to evade preemption simply by avoiding those magic words. They could accomplish the exact same goals by "an indirect but wholly effective means;" the Supreme Court has "often rejected" such efforts. *Am. Trucking Ass'ns*, 569 U.S. at 652.

Recognizing such authority to end-run EPCA would create further problems too. It would run directly counter to both EPCA and the Department's goals of reducing costs and increasing choice for consumers, alongside increasing domestic energy supply and energy conservation. *See* §§ 6295(o)(4) (energy conservation standard provision), (q)(1) (special rule must "consider such factors as the utility to the consumer of such a feature"), 6297(d)(4) (preemption waiver provision); U.S. Dep't of Energy, *Secretarial Order: Unleashing the Golden Era of American Energy Dominance* (Feb. 5, 2025), https://perma.cc/8GHX-PRA5; *Procedures, Interpretations, and Policies for Consideration of New or Revised Energy Conservation Standards and Test*

- 19 -

*Procedures for Consumer Products and Certain Commercial/Industrial Equipment*, 90 Fed. Reg. 16,093, 16,096–97 (Apr. 17, 2025); *see also* S. Rep. No. 100-6, at 2 (1987) (1987 amendment was intended to "reduce the regulatory and economic burdens on the appliance manufacturing industry"); H.R. Rep. 100-11 (1987) (seeking to "ensure that an amended standard does not deprive consumers of product choices and characteristics, features, sizes, etc."). And it would undermine federal neutrality between energy technologies and energy sources for covered products. EPCA's definitions are technology- and source-neutral: They apply equally to fossil fuel and electric products. *See* §§ 6291, 6295. Indeed, EPCA prohibits allowing state and local governments to create conservation objectives based on only one type of energy rather than total energy source. *See* § 6297(f)(3)(F). The Department's regulations, in turn, are primarily performance-based and do not mandate or prefer one fuel source. Thus, § 6297(c) prevents jurisdictions from functionally banning a disfavored energy type.

EPCA's preemptive reach, of course, is not unlimited, but this is not an edge case. There is no need to decide the outer limits of that scope here, because a complete ban on "natural gas, propane, or oil heaters, boilers, … fixtures," and "appliances" subject to federal standards based on the type of energy they use falls within them—whereas measures concerning subjects other than energy use likely present different issues. Here, though, the Township has banned federally authorized products based on the type of energy they use. Applying EPCA's plain text to preempt such measures does not threaten states and localities' ability to regulate dangerous or unsafe conditions. Nor would that application require that health and safety regulations' incidental impacts on covered products trigger preemption. It merely would prevent products subject to a federal standard, after rigorous testing, from being banned from using specific types of energy. *See California Rest. Ass'n*, 89 F.4th at 1101 (emphasizing ruling's "limited" reach). States and localities would remain free to experiment with different approaches to matters within their historical police powers. And Congress contemplated that states and localities would *collaborate* with the Federal Government on such experimentation through the waiver provision. *See* § 6297(d). Any concern about fundamentally different safety regulations is misplaced. *See* Mem.

17, 21, 26 (positing concerns over "fire-safety laws," a "ban on oversized furnaces" in certain spaces, and a "regulation that effectively prohibits the use of such appliances in close proximity to gas station pumps").[11]  Indeed, there has been no flood of challenges to such safety regulations in the Ninth Circuit despite the *California Restaurant Association* decision.[12]  Nor has there been a flood of waiver requests under § 6297(d) that might impact the Department's implementation of the statutory waiver provision.

For decades, the Department has promulgated energy conservation standards without concern that states and localities may end-run those standards by outright banning covered products based on the type of energy they use.  If measures like the Ordinance stand, that painstaking and vital work may be for naught.

## V. Dismissal of the Mayor and Township Committee Depends on Plaintiff's Ability to Obtain Complete Relief from the Remaining Defendants.

Lastly, Defendants contend that the Mayor and Township Committee should be dismissed because they are "not plausibly alleged to have any role in enforcing the All-Electric Ordinance." Mem. 31–32.  *But see* Compl. ¶¶ 10, 28.  If the other Defendants concede that Plaintiff could obtain complete relief from them, even in the absence of the Mayor and Township Committee,[13] then Plaintiff would not object to their dismissal at this stage.

### CONCLUSION

The Court should deny the Motion to Dismiss.

---

[11] On the contrary, if preemption were to turn on the state or locality's "reasons" for enacting a provision, *see* 89 F.4th at 1126 (Friedland, J., dissenting), courts would become awash with litigation over the diverse intentions of officials, agencies, and elected bodies.  The Township's intentions are plain, but the more appropriate focus is on a provision's effects.  *See* § 6297(c) ("no State regulation concerning … energy use … shall be *effective*" (emphasis added)).

[12] Nor does the Ordinance address "emissions," as *amici* suggest in their effort invoke state and local regulatory authority *viz.* that different subject.  *Amicus Curiae* Br. in Supp. of Defs.' Mot. to Dismiss, Dkt. 28-1 at 14–17.  That term appears nowhere in the enacted Ordinance.

[13] Defendants come close to saying as much, but not quite.  *See* Mem. 32 (asserting it is "unnecessary to maintain actions against individual Township Officials").

DATED: July 20, 2026     Respectfully submitted,

             BRETT A. SHUMATE
             Assistant Attorney General

             */s/ Charles E.T. Roberts*
             CHARLES E.T. ROBERTS
              (PA Bar No. 326539)
             Senior Counsel to the Assistant
              Attorney General
             U.S. Department of Justice
             Civil Division
             950 Pennsylvania Ave., NW
             Washington, DC 20530
             (202) 305-1141
             Charles.Roberts2@usdoj.gov

             *Counsel for the United States*

- 22 -