## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF MORRIS, NEW JERSEY; TOWNSHIP OF MORRIS COMMITTEE; DONNA J. GUARIGLIA, in her official capacity as Mayor of Morris Township; JOSEPH VUICH, in his official capacity as Consulting Township Engineer; RON AUTH, in his official capacity as Construction Code Official,<br><br>Defendants. | Civil Action No.: 2:26-cv-03412-JXN-CF<br><br><u>Civil Action</u><br><br>Motion Returnable: August 3, 2026<br><br>Oral Argument Requested |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THE MOTION TO DISMISS

Matthew J. Platkin
Angela Cai
**Platkin LLP**
413 Washington Avenue, Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
mplatkin@platkinllp.com
acai@platkinllp.com

Simon C. Brewer*
Carrie Y. Flaxman*
Elena Goldstein*
**Democracy Forward Foundation**
P.O. Box 34553
Washington, D.C. 20043
Phone: (202) 448-9090
sbrewer@democracyforward.org
cflaxman@democracyforward.org
egoldstein@democracyforward.org

* Admitted pro hac vice

Jarrid H. Kantor
Yulieika Tamayo
Alexander L. Mitchell
**Antonelli Kantor Rivera PC**
354 Eisenhower Pkwy, Suite 1000
Livingston, NJ 07039
908-623-3676
jkantor@akrlaw.com
ytamayo@akrlaw.com
amitchell@akrlaw.com

# TABLE OF CONTENTS

Table of Authorities ....................................................................................... iii

Introduction ....................................................................................................1

Argument........................................................................................................2

    **I.**  The EPCA does not preempt the All-Electric Ordinance...............................2

    A.  The All-Electric Ordinance regulates buildings, not appliances. ................2

    B.  The plain text of the EPCA undercuts the government's argument.........................................................................................................4

    C.  The government's reliance on other provisions of the EPCA is misplaced........................................................................................................9

    D.  Federalism principles require a narrow reading of the EPCA. ...................14

    **II.** The Mayor and Township Committee are not proper defendants.................15

Conclusion ...................................................................................................15

Certificate of Service ....................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ..........................................................14

*Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025)..................................................3

*Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 2026 WL 1871692 (2d Cir. June 30, 2026) .............1, 3, 7, 8, 9, 10, 11, 13, 14

*Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024)......................2, 6

*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013) ...................................11

*Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024).......................10

*Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149 (2018)...........................................5

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004)...............................................................................................8

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010)....................................................15

*Feliciano v. Dep't of Transp.*, 605 U.S. 38 (2025)....................................................5

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992)..................................8

*Gaia Gardens, LLC v. Township of Montclair*, 2026 WL 1733513 (D.N.J. June 16, 2026) ...............................................................................................14

*Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755 (3d Cir. 2023)................15

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018) .......................14

*Montgomery v. Caribe Transp. II, LLC*, 146 S. Ct. 1199 (2026).............................7

*Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304 (N.D.N.Y. 2025) ........................3

*Nat'l Ass'n of Homebuilders of the U.S. v. District of Columbia*, 2026 WL 837674 (D.D.C. Mar. 26, 2026)..................................................................4, 11

*Nat'l Ass'n of Homebuilders of U.S. v. Montgomery County*, 2026 WL 817322 (D. Md. Mar. 25, 2026) ................................................................3

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) ...............................14

**Statutes**

42 U.S.C. § 6291(4) ................................................................................4, 5

42 U.S.C. § 6291(6) ..................................................................................10

42 U.S.C. § 6297(c) ....................................................................................4

42 U.S.C. § 6297(d) ..................................................................................11

42 U.S.C. § 6297(d)(3)(A), (4) ..................................................................11

42 U.S.C. § 6297(f) ....................................................................................9

42 U.S.C. § 6297(f)(3)(A) ...........................................................................9

42 U.S.C. § 6297(f)(3)(E) ..........................................................................10

National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 103 ........................................................................................12

**Rules and Regulations**

47 Fed. Reg. 14,424 (Apr. 2, 1982) ...........................................................13

76 Fed. Reg. 51,281 (Aug. 18, 2011) ..........................................................6

**Other Authorities**

Twp. of Morris, Morris Cnty., New Jersey, Ordinance No. 08-22 (2022) .................2

iv

**INTRODUCTION**

The Complaint should be dismissed because federal law does not preempt the All-Electric Ordinance. As the opening memorandum of The Township of Morris ("Township") explained, the Energy Policy and Conservation Act ("EPCA") preempts only those state and local laws that set an energy conservation standard, or its substantial equivalent, for covered appliances. It does not preempt laws like the All-Electric Ordinance that address the fuel source buildings may use. A contrary conclusion would dramatically expand the statute's reach and improperly insert the federal government into issues of local concern, needlessly preventing local governments such as the Township from enacting modest measures to protect the health and safety of their residents.

The government's opposition identifies no valid basis for reaching that result. It merely rehashes arguments repeatedly rejected by courts interpreting the EPCA, including in the Second Circuit's comprehensive opinion in *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, --- F.4th ---, 2026 WL 1871692 (2d Cir. June 30, 2026) (*Contracting Plumbers II*). Those courts have recognized that nothing in the EPCA requires that every building be able to use fossil-fuel appliances. This Court also should reject the government's arguments.

1

## ARGUMENT

The Township's opening brief comprehensively detailed why the traditional tools of statutory interpretation—focusing on the EPCA's text and context—support a narrow interpretation of the preemption provision. *See* Dkt. No. 27-1 ("Twp. Mem."), at 16-27.[1] In response, the government largely recapitulates the flawed reading of the EPCA adopted by the Ninth Circuit. *See id.* at 37–39 (explaining why the *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), misinterpreted the EPCA). Those arguments repeat the errors identified by every court to have considered the issue subsequently and should be rejected.

## I.    The EPCA does not preempt the All-Electric Ordinance.

### A. The All-Electric Ordinance regulates buildings, not appliances.

The government simplistically maintains that because the All-Electric Ordinance names certain appliances, it "concerns" their "energy use" under the EPCA. But the All-Electric Ordinance does not directly regulate those appliances, as the government submits. *See* Dkt. No. 32 ("Opp'n"), at 13. Rather, the All-Electric Ordinance details the requirement "a new apartment complex or apartment style housing comprised of twelve (12) or more dwelling units" must meet to be issued a building permit. All-Electric Ordinance § 2. That requirement is that the building must "use[] a permanent supply of electricity as the sole source of energy to meet

---

[1] Page numbers for docket citations refer to the ECF-stamped header.

building energy needs," rather than using "natural gas, propane, or oil." *Id.* § 1. The Ordinance then lists examples of building energy needs, which include "heating and cooling, water heating . . . cooking appliances and clothes washing and drying appliances." *Id.* The fact that the Ordinance names certain appliances as examples does not mean the Ordinance imposes requirements directly on those appliances. To the contrary, it regulates which fuel source the building itself uses.

The Ordinance is of a piece with laws upheld by other courts that have rejected the government's preemption arguments. *Contra* Opp'n 13 (attempting to distinguish other court decisions). Each of those regulations has similarly required that certain buildings not use fossil fuels. *See Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 2025 WL 843619, at *1 (S.D.N.Y. Mar. 18, 2025) (*Contracting Plumbers I*) (upholding a law "generally prohibit[ing] the use of fossil fuels such as natural gas and heating fuel in newly constructed residential buildings in New York City"), *aff'd sub nom. Contracting Plumbers II*, 2026 WL 1871692; *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 311 (N.D.N.Y. 2025) (upholding a law "prohibiting 'the installation of fossil-fuel equipment and building systems' in certain new buildings"), *aff'd sub nom. Contracting Plumbers II*, 2026 WL 1871692; *Nat'l Ass'n of Homebuilders of U.S. v. Montgomery County*, 2026 WL 817322, at *1 (D. Md. Mar. 25, 2026) (upholding a law mandating new building codes that have "all-electric building standards for new construction"), *appeal*

3

*pending*, No. 26-1449 (4th Cir.); *Nat'l Ass'n of Homebuilders of the U.S. v. District of Columbia*, 2026 WL 837674, at *1 (D.D.C. Mar. 26, 2026) (upholding a law that "bans the use of gas appliances" in certain new buildings), *appeal pending*, No. 26-7050 (D.C. Cir.).

**B. The plain text of the EPCA undercuts the government's argument.**

As those recent decisions demonstrate, the plain text of the EPCA refutes the government's arguments. The preemption provision covers only those regulations "concerning . . . energy use," which the statute defines as a measure of how the appliance performs under specified test conditions. *See* Twp. Mem. 16–17 (citing 42 U.S.C. §§ 6291(4), 6297(c)). The government does not seriously dispute that, as defined by the EPCA, an appliance's "energy use" is a fixed measure that is determined when the appliance is designed or manufactured, long before it reaches the consumer. *See* Opp'n 20. Nor does it offer any account of how the EPCA's various testing and labeling provisions could work otherwise. *See* Twp. Mem. 25–26 (observing that it would be impossible to comply with these requirements if a covered product's "energy use" depended on the location of its installation). That tacit admission suffices to resolve this case. Nothing in the All-Electric Ordinance prescribes, regulates, or affects a covered product's "energy use," as the statute defines the term. As a result, the EPCA preemption does not apply.

In attempting to argue otherwise, the government starts off on the wrong foot by leaning on the colloquial meaning of energy use. *See* Opp'n 5. The EPCA defines that term, and courts "must follow that definition, even if it varies from a term's ordinary meaning." *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quotation marks omitted). Nowhere does the government contend—nor could it— that the All-Electric Ordinance prescribes how a covered appliance performs under the "test procedures" established by the EPCA. 42 U.S.C. § 6291(4). As a result, it does not directly or indirectly regulate any product's "energy use."

Finding no support in the statutory definition of "energy use," the government invokes two other pieces of statutory language. Neither supports its position.

**1. Point of Use.** As the Township's opening memorandum makes plain (at 18–21), the term "point of use" is a "term of art with long-encrusted connotations in a given field." *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025). Instead of seriously contesting this position, the government's attempts to obfuscate this term of art by suggesting the Court should use the term's "ordinary meaning." Opp'n 16. As a "term of art," "point of use" must be given its proper, technical meaning: an appliance's "energy use" consists only of site energy (the energy consumed by an appliance's operation), rather than source energy (which is site energy plus the energy required to produce and transmit energy to the site). *See* Twp. Mem. 18–21. Thus, the EPCA's regulation of "energy use" is limited to the energy consumed

5

during an appliance's typical operation, and it does not include whether an appliance can use fossil fuels in particular buildings.[2]

It follows that nothing about the All-Electric Ordinance makes it "impossible" to establish a representative cycle to measure the appliance's energy use. *Contra* Opp'n 16. The Ordinance's requirement that new residential apartment buildings use only electric power means only that those buildings will not be able to use certain covered appliances. That is no different than many other laws that are not preempted by the EPCA, such as a prohibition on oversized furnaces or kerosene heaters. *See* Twp. Mem. 28 & n.4.

Moreover, the government is mistaken that the All-Electric Ordinance "functionally is setting standards" for a product's energy use. Opp'n 17. The All-Electric Ordinance does not impose any requirements based on whether an appliance meets or exceeds a particular energy conservation standard. At most, "[i]t simply directs consumers to one set of products with one set of federal efficiency standards (electric appliances) over another set of products with different federal efficiency standards (gas appliances)." *California Rest. Ass'n*, 89 F.4th at 1126 (Friedland, J.,

---

[2] The proposed rule cited by the government (Opp'n 10–11) reflects the same understanding. *See* Energy Conservation Program for Consumer Products and Certain Commercial and Industrial Equipment: Statement of Policy for Adopting Full-Fuel-Cycle Analyses Into Energy Conservation Standards Program, 76 Fed. Reg. 51281, 51284 (Aug. 18, 2011) ("[T]he ultimate energy conservation standard chosen must be expressed as a point-of-use measure.").

dissenting).[3] It therefore strains credulity to assert that upholding the All-Electric Ordinance would "disrupt the Department's administration of EPCA's Energy Conservation Program." Opp'n 24.

**2. Concerning.** Next, the government attempts to use the word "concerning" to expand the EPCA's preemption provision beyond its limits. *See* Opp'n 11–12. As the Township previously explained (Twp. Mem. 30–31), that word does not expand the statute's scope in the manner the government suggests. Rather, "concerning," like its synonym "related to," must be given meaningful limits. *See Montgomery v. Caribe Transp. II, LLC*, 146 S. Ct. 1199, 1207 (2026) (Kavanaugh, J., concurring). But the government refuses to propose any "outer limits" on its interpretation of the EPCA's scope. Opp'n 25. This underscores a critical flaw: its position would sweep in many state and local laws, including fire-safety provisions such as bans on furnaces, which no one believes preempted. *See Contracting Plumbers II*, 2026 WL 1871692, at *13 (outlining the "absurd results" that would follow from the government's position).

The better course is to adopt the narrower interpretation offered by the Township. This narrow interpretation has been endorsed by the Second Circuit and

---

[3] That observation is another reason why the government is wrong to insist that the All-Electric Ordinance requires "zero" "energy use." *See* Opp'n 14–15, 17, 22 n.9. An appliance may use exactly the amount of energy permitted by the relevant energy conservation standard DOE has implemented for that category of product.

four other district courts. It would hold preempted only those regulations that "directly, substantially, and specifically" regulate the energy use of a covered appliance such that they constitute an energy conservation standard, or the equivalent thereof, and thereby interfere with the federal law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992). Far from nullifying the EPCA's preemption provision as the government asserts (Opp'n 13, 20), that interpretation gives it the effect Congress intended by ensuring that manufacturers can follow nationally uniform energy conservation standards, without upending the settled balance of state and local regulation.

Finally, the government's reliance on *Engine Manufacturers Ass'n v. South Coast Air Quality Management District*, 541 U.S. 246 (2004), fails to advance its argument. There, the Supreme Court held that that a state could not evade the Clean Air Act's preemption of emissions standards for motor vehicles by enforcing the standard against purchasers (who were not directly regulated by the Clean Air Act) rather than against manufacturers. *See id*. at 252–55. But the All-Electric Ordinance does not attempt to enforce an energy conservation standard, or its equivalent, against anyone, which makes *South Coast* inapposite. Upholding the All-Electric Ordinance does not enable circumvention of the EPCA's preemption provision by shifting the object of the regulation, as the Second Circuit recognized. *See Contracting Plumbers II*, 2026 WL 1871692, at *7 n.5.

8

### C. The government's reliance on other provisions of the EPCA is misplaced.

Statutory context reinforces the narrowness of the EPCA's preemption provision. *See* Twp. Mem. 25–30. The EPCA's numerous provisions—including the EPCA's testing, labeling, and certification requirements—could not function sensibly if the government's reading of "energy use" were accepted. After all, no one could know how much energy an appliance would use in any particular location before labeling and selling it.

Rather than respond to these arguments, the government instead asserts that two other EPCA provisions and the statutory history support its interpretation. Neither can bear the weight the government places on it, and the statutory history further undercuts the government's arguments.

**1. Building-Code Exception.** First, the government turns to the EPCA's exception to preemption for certain building-code requirements. *See* 42 U.S.C. § 6297(f). True, that provision indicates that certain building codes could be preempted absent the exception. *See* Twp. Mem. 38. Far from undermining the Township's interpretation of the EPCA, "the exemption provision further supports it." *Contracting Plumbers II*, 2026 WL 1871692, at *11.

The building-code provision addresses regulations that "target[] building-wide energy conservation." *Id.*; *see also* 42 U.S.C. § 6297(f)(3)(A) (discussing the "energy consumption or conservation objective for a building"). Absent the

9

exception, such regulations might be preempted because they de facto require builders to use appliances with efficiencies exceeding those in the federal energy conservation standards. *Contracting Plumbers II*, 2026 WL 1871692, at \*11; *see also, e.g.*, 42 U.S.C. § 6297(f)(3)(E) (considering which combinations of appliances may be necessary to meet a building's overall energy objective). The building-code provision therefore indicates that EPCA preemption might apply if a state or municipality attempts to regulate covered products' energy usage or energy efficiency through building-level limits on energy consumption.[4]

The All-Electric Ordinance is not such a provision. It does not require builders to use appliances that exceed federal standards. It merely regulates the fuel source that some buildings use. A builder can fully comply with the All-Electric Ordinance by using electric appliances that meet (and do not exceed) their relevant federal energy conservation standards.

---

[4] Congress may have chosen not to use the term "energy conservation standard" in the preemption provision to achieve this result. Because an energy conservation standard only applies to a single covered product, 42 U.S.C. § 6291(6), that would arguably not encompass building-wide objectives. The government is therefore mistaken to say (Opp'n 14) that the Township's interpretation fails to distinguish between "regulation[s] concerning . . . energy use" and "energy conservation standards." In any event, "Congress need not state its intent in any particular way," *Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (citation omitted), and the Township's interpretation ensures the statute works as a coherent and unified whole.

10

**2. Waiver Provision.** Second, the government invokes the EPCA's preemption waiver provision, 42 U.S.C. § 6297(d). That provision authorizes the DOE to waive EPCA preemption if a state or local law satisfies certain criteria.

That provision also has little bearing on the issues presented here. Although such "[e]xceptions to a general rule" can "sometimes [be] a helpful interpretive guide," they "do not in themselves delineate the scope of the rule." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013). The waiver provision therefore does not control the scope of the general rule of preemption, as the government contends. *See Contracting Plumbers II*, 2026 WL 1871692, at *7; *District of Columbia*, 2026 WL 837674, at *10. Because the general rule of preemption does not cover the All-Electric Ordinance of its own force, the waiver provision should not be read to change that result.

In any event, the government overreads the waiver provision. Before granting a waiver, the DOE must consider effects on the "distribution, sale, or servicing" of covered products, as well as whether the waiver "is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics" or features. 42 U.S.C. § 6297(d)(3)(A), (4). As the Second Circuit explained, even read generously, these provisions show that "Congress thought energy conservation interests need not *always* be the only priority in setting energy conservation standards." *Contracting Plumbers II*, 2026 WL 1871692, at *7. But

11

that doesn't advance the government's argument. The waiver provision does not illuminate "Congress's view of other interests, like protecting public health and addressing climate change, let alone whether those varying interests support imposing a totally different kind of regulation (i.e., a prohibition on types of energy rather than a standard for the amount of energy consumed)." *Id.* In short, the waiver provision is addressed to different kinds of state and local regulations, which Congress thought merited a different analysis.

**3. Statutory history.** In response to the Township's explanation that the EPCA's amendments (and DOE's own prior views) support the narrow view of the preemption provision, *see* Twp. Mem. 22–25, the government first suggests that Congress's 1987 amendments support its broader reading. *See* Opp'n 22–23. This argument largely rehashes the government's mistaken views about the word "concerning." That aside, it is hard to square the government's argument about the 1987 amendment with the title Congress chose for these amendments: "GENERAL RULE OF PREEMPTION FOR ENERGY CONSERVATION STANDARDS WHEN FEDERAL STANDARD BECOMES EFFECTIVE FOR A PRODUCT." *See* National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, § 7, 101 Stat. 103, 118. The title confirms that Congress understood its amendments as cabined to state and local laws that constitute an "energy conservation standard," or the equivalent. It would be

12

puzzling to read that as authorizing the kind of freewheeling preemption over local ordinances that the government is now pursuing.

Next, the government turns to its own prior interpretations, relying on, for example, its view that a "[p]rohibition of hook-ups for appliances with less than a certain efficiency" would be preempted. Opp'n 22–23. But as the Township previously observed (Twp. Mem. 27–28), the underlying principle was whether the regulation had a direct relation to appliance efficiency or only "a secondary and incidental effect of improving the efficiency of a covered product." Energy of Conservation Program for Consumer Products; Proposed Rulemaking and Public Hearings Regarding Energy Efficiency Standards for Refrigerators and Refrigerator-Freezers, Freezers, Clothes Dryers, Water Heaters, Room Air Conditioners, Kitchen Ranges and Ovens, Central Air Conditioners, and Furnaces, 47 Fed. Reg. 14424, 14456 (Apr. 2, 1982). The hook-up prohibition falls in the former category, but a ban on oversized appliances would fall in the latter. *Id.*; *accord Contracting Plumbers II*, 2026 WL 1871692, at *11 n.13. Any effect the All-Electric Ordinance has on efficiency could only be incidental—which the government simply ignores.

Finally, the amendments to the waiver provision add nothing to the government's interpretation. *Contra* Opp'n 23. To the contrary, the criteria for obtaining a waiver would make little sense if applied to laws that regulate a fuel source but have (at most) an incidental effect on a covered product's efficiency, such

13

as the All-Electric Ordinance or fire-safety laws. *See* Twp. Mem. 29–30. Even if no litigation over fire-safety laws has occurred yet, the fact that the government's reading would invite those consequences is reason enough to reject its contentions. *Cf. Contracting Plumbers II*, 2026 WL 1871692, at *11 n.14.

### D. Federalism principles require a narrow reading of the EPCA.

The statutory text and context conclusively refute the government's arguments, but if any doubt remained, the presumption against preemption would tip the scales in favor of upholding the All-Electric Ordinance. *See* Twp. Mem. 32–35.

The government is wrong to suggest (at 17) that the presumption never applies to express preemption provisions. The Third Circuit has already rejected that position in *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018), explaining that the presumption applies to express preemption clauses involving "areas historically regulated by states." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 n.5 (3d Cir. 2018); *see, e.g.*, *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (applying the presumption to "questions of express . . . pre-emption").

That is true here: Traditional areas of state regulation include health and safety measures and environmental regulations, including air-pollution prevention. Twp. Mem. 32–33 (collecting cases); *see also Gaia Gardens, LLC v. Township of Montclair*, 2026 WL 1733513, at *6 (D.N.J. June 16, 2026) ("Because the Ordinance is designed to protect the public health, welfare, and the environment, the

14

presumption against preemption applies with 'particular force.'" (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 116 (3d Cir. 2010)), *appeal filed*, No. 26-02749 (3d Cir. July 16, 2026). The government's failure to address any of those authorities illustrates the weakness of its position. The All-Electric Ordinance fits comfortably with the broad areas of historic state regulation recognized by the Third Circuit and by this Court. As a result, the presumption against preemption resolves any doubt about the scope of EPCA preemption in the Township's favor.

## II.  The Mayor and Township Committee are not proper defendants.

Finally, the government fails to show why the Mayor and the Township Committee should not be dismissed. *See* Opp'n 26. It cites no authority indicating that the Mayor and the Township Committee are proper defendants, and it provides no explanation for why their presence would be necessary for it to obtain the "complete relief" it seeks. *Id.* Such conclusory arguments forfeit the issue. *See, e.g., Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (holding that a district court need not considered "arguments raised in passing" (cleaned up)). Accordingly, this Court should grant the motion to dismiss as to those defendants.

## CONCLUSION

For these reasons and those stated in Township's memorandum in support of the motion to dismiss, the Court should dismiss the complaint with prejudice.

15

July 27, 2026                                          Respectfully submitted,


*/s/ Angela Cai*

| Matthew J. Platkin | Simon C. Brewer* | Jarrid H. Kantor |
|---|---|---|
| Angela Cai | Carrie Y. Flaxman* | Yulieika Tamayo |
| **Platkin LLP** | Elena Goldstein* | Alexander L. Mitchell |
| 413 Washington Avenue, | **Democracy Forward Foundation** | **Antonelli Kantor** |
| Unit 174 | P.O. Box 34553 | **Rivera PC** |
| Belleville, NJ 07109 | Washington, D.C. 20043 | 354 Eisenhower Pkwy, |
| Phone: (973) 561-1951 | Phone: (202) 448-9090 | Suite 1000 |
| mplatkin@platkinllp.com | sbrewer@democracyforward.org | Livingston, NJ 07039 |
| acai@platkinllp.com | cflaxman@democracyforward.org | 908-623-3676 |
| | egoldstein@democracyforward.org | jkantor@akrlaw.com |
| | | ytamayo@akrlaw.com |
| | * Admitted pro hac vice | amitchell@akrlaw.com |


*Counsel for Defendants*


16

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 27, 2026, I electronically filed the foregoing Reply Memorandum in Support of the Motion to Dismiss with the Clerk of Court of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.

Dated: July 27, 2026          /s/ Angela Cai
                              Angela Cai
                              *Counsel for Defendants*